```
                    UNITED STATES DISTRICT COURT

                     DISTRICT OF NEW HAMPSHIRE
```

Allan Bald,
      Plaintiff

      v.                                    Case No. 15-cv-219-SM
                                             Opinion No. 2016 DNH 081
PCPA, LLC, and
Prime Choice Brands, LLC,
      Defendants


                          **O R D E R**


    This action arises out of the alleged breach of a franchise agreement between two limited liability companies: The Flying Butcher, LLC (as franchisee) and Meat House Franchising, LLC (as franchisor).  In April of 2014, Meat House Franchising found itself in financial distress and the defendants, PCPA and Prime Choice Brands, acquired the rights to enforce its franchise agreements against its franchisees.  Having acquired those rights, the defendants, in March of 2015, asserted breach of contract claims against the Flying Butcher and Allan Bald, its principal.

    Defendants invoked arbitration provisions included in both The Flying Butcher's franchise agreement and a related "area development agreement," as the appropriate process to resolve its claims.  The Flying Butcher acknowledges that it is contractually obligated to arbitrate the parties' disputes.  But, Allan Bald,

the sole member of The Flying Butcher, LLC, denies that he is a party (in his personal capacity) to either the Franchise Agreement or the Area Development Agreement.  Accordingly, Bald brought this action, seeking a declaratory judgment that he is not legally bound to arbitrate any disputes that may exist between him and defendants.

Pending before the court is Bald's motion for summary judgment.  Defendants object, saying there are genuinely disputed material facts bearing on the dispositive questions posed, that is, whether Bald, in his personal capacity, is a party to the Franchise Agreement and/or the Area Development Agreement and, if so, whether the mandatory arbitration provisions, as worded, apply to him.

For the reasons discussed, Bald's motion for summary judgment is granted.

**Standard of Review**

When ruling on a motion for summary judgment, the court must "constru[e] the record in the light most favorable to the non-moving party and resolv[e] all reasonable inferences in that party's favor."  <u>Pierce v. Cotuit Fire Dist.</u>, 741 F.3d 295, 301 (1st Cir. 2014).  Summary judgment is appropriate when the record

reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." Int'l Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted). See also Nolan v. CN8, 656 F.3d 71, 76 (1st Cir. 2011). Nevertheless, if the non-moving party's "evidence is merely colorable, or is not significantly probative," no genuine dispute as to a material fact has been proved, and "summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citations omitted).

The key, then, to defeating a properly supported motion for summary judgment is the non-movant's ability to support his or her claims concerning disputed material facts with evidence that conflicts with that proffered by the moving party. See generally Fed. R. Civ. P. 56(c). It naturally follows that while a reviewing court must take into account all properly documented facts, it may ignore a party's bald assertions, speculation, and unsupported conclusions. See Serapion v. Martinez, 119 F.3d 982, 987 (1st Cir. 1997). See also Scott v. Harris, 550 U.S. 372, 380

(2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

**Background**

In 2011, Bald formed The Flying Butcher, LLC, a New Hampshire limited liability company.  Bald is the sole member of that business organization.  On April 20, 2012, The Flying Butcher entered into a franchising agreement with Meat House Franchising ("MHF").  See generally Franchise Agreement (document no. 15-3).  At some point in 2014, MHF began to experience financial distress and franchisees started closing their stores.  In April of 2014, defendants entered into an agreement with MHF's secured creditors, pursuant to which defendants apparently acquired all of the rights that MHF held under the Franchise Agreement with The Flying Butcher, as well as certain intellectual property that once belonged to MHF.

According to Bald, The Flying Butcher terminated its Franchise Agreement on April 2, 2014 - approximately two weeks before defendants acquired MHF's assets.  Defendants dispute that, asserting that Bald continued "advertising" using the Meat

House name on a Facebook page until at least May 10, 2014. But, for purposes of resolving Bald's pending motion, that dispute is not important.

On March 16, 2015, defendants filed a statement of claim with the American Arbitration Association ("AAA"), asserting that both Bald and The Flying Butcher are parties to, and breached, the Franchise Agreement and Area Development Agreement, both of which contain mandatory arbitration provisions. Bald objected, asserting that he was not personally bound by the arbitration provisions. According to defendants, the AAA determined on April 21, 2015, that defendants met the filing requirements for arbitration against Bald by reason of the arbitration provision contained in the Franchise Agreement (it seems the AAA did not address the arbitration provision said to be included in the Area Development Agreement). Shortly thereafter, Bald filed this suit in state court, seeking a judicial declaration that he is not contractually bound by the arbitration provisions in the referenced contracts. That action was removed to this court and Bald subsequently filed the pending motion for summary judgment.

**Discussion**

I.  <u>Who Decides Whether a Party is Obligated to Arbitrate</u>?

A preliminary question presented by plaintiff's motion for summary judgment is whether this court or the American Arbitration Association decides whether Bald is subject to the Franchise Agreement's arbitration provision.  That issue can be resolved fairly quickly.

As the Supreme Court has observed, it is well-established that because arbitration is a matter of contract, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  <u>AT & T Techs., Inc. v. Commc'ns Workers of Am.</u>, 475 U.S. 643, 648 (1986).  The Court went on to note that, "[t]his axiom recognizes the fact that arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration."  <u>Id.</u> at 648-49.  Consequently, "<u>[u]nless the parties clearly and unmistakably provide otherwise</u>, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."  <u>Id.</u> at 649 (emphasis supplied).  Needless to say, if Bald is not personally liable under the Franchise Agreement, he is not obligated to arbitrate any dispute arising thereunder.

6

II.  <u>Is Bald a Party to the Contract in His Individual Capacity</u>?

Bald unambiguously signed the Franchise Agreement in his capacity as an authorized representative of The Flying Butcher. The signature block on the contract reads as follows:

>    The Flying Butcher, LLC
>    By:  Allan Bald
>    Title: CEO

Similarly, in June of 2012, Bald executed an "Amendment to Franchise Agreement" on behalf of "The Flying Butcher, LLC d/b/a The Meat House of Amherst" as "Allan Bald, Manager, Duly Authorized."  <u>See</u> Amendment to Franchise Agreement (document no. 16-12) at 4.  It seems facially plain, then, that Bald signed not in his personal capacity but only as the agent of, and on behalf of the business entity, a disclosed principal.

New Hampshire courts "follow section 328 of the Restatement (Second) of Agency, which provides that '[a]n agent, by making a contract only on behalf of a competent disclosed or partially disclosed principal whom he has power so to bind, does not thereby become liable for its nonperformance.'"  <u>GE Mobile Water, Inc. v. Red Desert Reclamation, LLC</u>, 6 F. Supp. 3d 195, 200 (D.N.H. 2014) (collecting cases).  <u>See also</u> Restatement (Third) Of Agency § 6.01 (2006) ("When an agent acting with actual or apparent authority makes a contract on behalf of a disclosed

7

principal, (1) the principal and the third party are parties to the contract; and (2) the agent is not a party to the contract unless the agent and third party agree otherwise."). Consequently, the New Hampshire Supreme Court has noted that:

> [A] manager or member, acting as an agent of an LLC, is protected from personal liability for making a contract where acting within his authority to bind the LLC. Thus, where an LLC enters into a contract, the manager's signature on the contract, with or without a designation as to his representative capacity, does not render him personally liable under the contract. LLC members and managers who disclose that they are contracting on an LLC's behalf are not liable for a breach because they are not parties to the contract – only the LLC itself is.

Mbahaba v. Morgan, 163 N.H. 561, 565-66 (2012) (citations and internal punctuation omitted).[1]

So, the legal presumption is that an authorized member of a limited liability company who executes a contract on behalf of that company is not a party to the contract in his or her personal capacity. And, when parties to a contract wish to bind

---

[1] Of course, a manager or member of an LLC is free to assume personal liability for "any or all of the debts, obligations, and liabilities of the limited liability company," N.H. Rev. Stat. Ann. ("RSA") 304-C:23, but his or her agreement to do so must be clearly expressed. Absent such a clear assumption of liability on the part of a member or manager, New Hampshire law is clear: "No member or manager of a limited liability company shall be obligated personally for any such debt, obligation, or liability of the limited liability company solely by reason of being a member or acting as a manager of the limited liability company." RSA 304-C:23 I(b).

that member in his or her individual capacity, they, including the agent to be personally bound, must express their intentions clearly and unambiguously. "The most obvious indicator of intent is the form of the signature. . . . [W]here individual responsibility is demanded the nearly universal practice is that the officer signs twice - once as an officer and again as an individual." Israel v. Chabra, 537 F.3d 86, 97 (2d Cir. 2008) (citation omitted). Here, as noted above, no such intent to bind Bald in his personal capacity is evidenced: both the Franchise Agreement and the Amendment to Franchise Agreement contain a single signature block; Bald executed those contracts solely on behalf of the limited liability company; and he did not sign either contract in his personal capacity. Indeed, his name does not appear anywhere in the agreement save for his signature as agent.

There is no evidence or suggestion that MHF ever asked Bald to personally guaranty The Flying Butcher's obligations under the Franchise Agreement - notwithstanding that the Franchise Agreement clearly states that MHF would require every "person with an ownership interest" in the franchisee to sign a personal guaranty. Franchise Agreement at para. 11(a)(i). Nor did MHF require Bald to obtain a "Spousal Consent," as referenced in Paragraph 12(e) of the Franchise Agreement. That MHF did not require Bald to sign a personal guaranty or obtain "spousal

9

consent," and that Bald executed the Franchise Agreement solely on behalf of The Flying Butcher, support his claim that neither he nor MHF ever intended that he would be personally liable under the franchise contract.

Additionally, defendants offer no admissible evidence suggesting that MHF ever negotiated for, or even discussed, Bald's becoming a party to the Agreement in his individual capacity.  Nor has any evidence been offered suggesting a course of dealing, or acts, or statements by Bald suggesting an intent on his part to become a party to or personally liable under the agreement.

Defendants do point to language in the form Franchise Agreement itself that seems to contemplate that the various franchisees' principals are individually liable under the Franchise Agreements.  For example, they point to Paragraph 12 entitled "Covenants," which specifically references and purports to bind "You [i.e., The Flying Butcher] and your Principals." That paragraph prohibits The Flying Butcher and its principals from disclosing or improperly using any trade secrets, proprietary software, business practices, and other proprietary information and intellectual property of MHF.  (Parenthetically, those are the covenants defendants claim Bald and the Flying

Butcher violated.) Additionally, Paragraph 24 of the Franchise Agreement, which contains the arbitration provision, states that "you and we ('the parties') agree" to be bound by arbitration. MHF asserts that, reading the Franchise Agreement in its entirety and as a whole, it should be clear that the parties intended the pronoun "you" to refer to The Flying Butcher <u>and</u> its principals.[2] But defendants offer no other admissible evidence to support their contention that <u>Bald</u> is personally liable under the Franchise Agreement. Their position rests entirely upon weak and inferential evidence based on the language used in the agreement.

Of course, that MHF might have contemplated or even "agreed" that a franchisee's principals would be party to and personally bound by contractual obligations to preserve trade secrets, proprietary software, etc., does not operate to personally obligate those individual principals. <u>See, e.g.</u>, <u>EQT Infrastructure Ltd. v. Smith</u>, 861 F. Supp. 2d 220, 233 (S.D.N.Y. 2012) (the ambiguous presence of an individual's name in a contract is an insufficient indication of an intent to be personally bound — that intent must be clear and explicit). If

---

[2] Bald argues, to the contrary, that since the arbitration provision, as worded and unlike paragraph 12, does not include any reference to "Principals," even if he is deemed to be a party to, or personally liable under the Franchise Agreement, still, he would not be subject to arbitration. It is unnecessary to resolve that interpretive dispute, however.

11

MHF intended to make the Flying Butcher's principal (or any other franchisee's principals) personally liable to MHF under the Franchise Agreement, it easily could have done so by obtaining the principal's clear and explicit consent.  MHF did not do so. See generally DK Joint Venture 1 v. Weyand, 649 F.3d 310 (5th Cir. 2011) (holding that despite contract language purporting to bind "affiliates" of corporate signatory (including individual corporate officers), the parties cannot bind corporate officers to the contract and its arbitration provision unless those officers clearly agree to be bound) (collecting cases).  See also EQT Infrastructure, 861 F. Supp. 2d at 232-33 (S.D.N.Y. 2012) (applying the so-called "Lollo" factors under New York law and concluding that an agent who signed a contract on behalf of a disclosed principal was not personally liable under that contract); American Guild of Musical Artists v. Atlanta Municipal Theater, Inc., 322 F. Supp. 1154 (N.D. Ga. 1971) (concluding that agent of nonprofit corporation was not personally bound by contract, despite provisions stating that he was signing it both as an agent for his employer and "in his capacity as an individual" and that "this agreement shall bind him, individually and personally," as well as his employer); McCarthy v. Azure, 22 F.3d 351, 361 (1st Cir. 1994) (signing an arbitration agreement as agent for a disclosed principal is not sufficient to bind the agent to arbitrate claims against him personally).

While the record before the court is perhaps not as fully developed as it might be, still, there are no material facts shown to be genuinely disputed, and on this record, the balance comes down decidedly in favor of Bald. Bald is entitled to judgment as a matter of law given the undisputed facts, as it is clear that he is neither a party to, nor personally bound by, the terms of the Franchise Agreement.

## Conclusion

For the foregoing reasons, as well as those set forth in plaintiff's legal memoranda, Bald is not a party to, nor is he personally liable under, nor is he personally bound by the Franchise Agreement between The Flying Butcher, LLC, and Meat House Franchising, LLC.[3] Consequently, he did not agree to arbitrate disputes with defendants related to the agreement, and

---

[3] As to the parties' related contract – the "Area Development Agreement" dated September 10, 2010 – Bald acknowledges that the Franchise Agreement references such a document, but says he has no recollection (or documentary evidence) of having ever signed it. For their part, defendants have failed to produce an executed copy of the Area Development Agreement. But, they say there is circumstantial evidence Bald signed that contract, since he paid an "area development fee." Of course, that is not evidence that Bald signed such an agreement in his personal capacity; even if Bald did sign that contract (an unknown), it is entirely possible that he signed it solely as an authorized representative of The Flying Butcher or some other corporate entity (as some evidence in the record suggests he may have done). Consequently, on this record, defendants' only colorable argument is that Bald is personally bound by the arbitration provision in the Franchise Agreement.

so is not subject to the mandatory arbitration clause included in that agreement. Accordingly, Bald's motion for summary judgment (document no. 15) is granted.

The rights of the parties having been declared, further relief in the nature of an injunction is unnecessary. Should such relief become necessary for any reason, however, plaintiff may file an appropriate motion in this case and it will be heard.

   **SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

April 19, 2016

cc:  Jonathan M. Shirley, Esq.
     David M. Chaise, Esq.
     Michael Einbinder, Esq.
     William B. Pribis, Esq.